IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FIRST BAPTIST CHURCH;<br>PASTOR STEPHEN ORMORD;<br>CALVARY BAPTIST CHURCH;<br>PASTOR AARON HARRIS<br>           Plaintiffs,<br><br>v.<br><br><br>GOVERNOR LAURA KELLY,<br>in her official capacity,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND
INJUNCTIVE RELIEF**

1. On April 7, 2020, five days before Easter Sunday, Kansas Governor Laura Kelly issued Executive Order 20-18, which prohibited all "mass gatherings" of 10 or more people in a confined or enclosed space at the same time. *See* Executive Order 20-18, attached as **Exhibit 1** (hereinafter "EO 20-18"). EO 20-18 states it remains in effect until May 1, 2020.

2. While EO 20-18 carves out broad exemptions for 26 types of secular activities from this gathering ban, including, bars and restaurants, libraries, shopping malls, retail establishments, and office spaces the order singled out "churches and other religious services or activities" to expressly *prohibit* any type of gathering of more than ten non-performing individuals, regardless of whether social distancing, hygiene, and other efforts to slow the spread of COVID-19 were practiced.

3. Notably, the allowance for persons to gather in particular contexts was carried over from EO 20-14 to EO 20-18 for libraries with no express requirement that such persons do so only if they can "engage in appropriate social distancing." Under EO 20-18, persons can

1

gather in shopping malls and retail establishments "where large numbers of people are present but are generally not within arm's length of one another for more than 10 minutes." Under EO 20-18 as under EO 20-14, persons can gather at restaurants and bars provided only that the facilities "preserve social distancing of 6 feet between tables, booths, bar stools, and ordering counters; and cease self-service of unpackaged food, such as in salad bars or buffets." However, religious gathering were banned outright if the number of individuals present exceeded 10 persons.

4. As of the filing of this Complaint, despite widespread reporting and litigation before the Kansas Supreme Court, EO 20-18 has not been published by the Secretary of State in the Kansas Register.

5. EO 20-18 rescinded Executive Order 20-14, the Governor's previous mass gathering ban. *See* Executive Order 20-14, attached as **Exhibit 2** (hereinafter "EO 20-14"). EO 20-14 had expressly exempted "religious gatherings" from the mass gathering ban, provided that "attendees can engage in appropriate social distancing." *See id.* at Section 2(c).

6. Moreover, Executive Order 20-16, the Governor's state-wide "stay-at-home" order, expressly allowed Kansans to "perform or attend religious or faith-based services or activities" as exempt activities under the order. *See* Executive Order 20-16, attached hereto as **Exhibit 3**.

7. On April 8, 2020, Kansas Attorney General Derek Schmidt issued a memorandum to all Kansas prosecutors and law enforcement stating that the religious gathering prohibitions of EO 20-18 "likely violate both state statute and the Kansas Constitution." *See* Memorandum from Attorney General Derek Schmidt (April 7, 2020), attached hereto as **Exhibit 4 at 5.**

8. Attorney General Schmidt concluded in his memo that:

> provisions of the governor's order that purport to *criminalize* certain gatherings for religious services or activities likely violate both state statute and the Kansas Constitution, which would render them void and unenforceable. . . . Law enforcement are advised to encourage cooperative compliance with the new provisions of EO 20-18 and to avoid engaging in criminal enforcement of its limitations on religious facilities, services or activities.

*Id.*

9. On April 8, 2020, the Kansas Legislative Coordinating Council (hereinafter "LCC") voted to rescind EO 20-18 under the ostensible authority of HCR 5025, citing the constitutionality concerns raised by Attorney General Schmidt's memorandum.

10. On April 9, 2020, Governor Kelly sued the Kansas Legislature and the LCC in an original quo warranto action with the Kansas Supreme Court.

11. On April 11, 2020, the Kansas Supreme Court granted emergency relief to Kansas Governor by narrowly ruling that the LCC lacked the authority to rescind EO 20-18 under the plain language of HCR 5025. The court expressly declined to consider the constitutionality of the religious gatherings ban under EO 20-18, stating in its opinion that the religious liberty considerations must be brought in a separate action. *See* Kelly v. LCC et al., Slip Op. No. 122,765 at 3, 23 (Kan. 2020).

12. On Easter Sunday, April 12, 2020, in Dodge City, Kansas, Plaintiffs First Baptist Church and Pastor Stephen Ormord attempted to hold an outdoor, "drive-in" church service with approximately 20 of their congregants parked in cars in front of the church spaced 6 feet apart. Due to high winds and technological difficulties, the congregants were unable to hear or effectively participate in the service. The church had already adopted rigorous social distancing and health safety protocol to protect individuals gathered for worship, and the congregation was

able to safely conduct the service within the sanctuary space pursuant to that protocol by remaining 6 feet apart throughout the service.

13. On Easter Sunday, April 12, 2020, in Junction City, Kansas, Plaintiffs Calvary Baptist Church and Pastor Aaron Harris held an in-door church service with 21 of their congregants while adopting rigorous social distancing and health safety protocols to protect individuals gathered for worship. A member of local law enforcement monitored the service inside the building.

14. On April 14, Pastor Harris spoke with the Geary County Sheriff to discuss whether the Sheriff would enforce the Executive Order 20-18 that was issued. The Sheriff warned Pastor Harris that he would be subject to criminal enforcement of Governor's Executive Order 20-18 should his church hold an in-person service the following week in which more than 10 people were sitting in the pews.

15. On April 14, 2020, United States Attorney General William Barr issued a statement that "the First Amendment and federal statutory law" also prohibit governments from

> impos[ing] special restrictions on religious activity that do not also apply to similar nonreligious activity. For example, if a government allows movie theaters, restaurants, concert halls, and other comparable places to assemble to remain open and unrestricted, it may not order houses of worship to close, limit their congregation size, or otherwise impede religious gatherings. Religious institutions must not be singled out for special burdens.

*See* Statement of Attorney General William P. Barr, attached hereto as **Exhibit 5**.

16. In his statement, Attorney General Barr also announced the Department of Justice had filed a Statement of Interest in support of a Mississippi church that allegedly sought to hold parking lot worship services before being criminally cited by local law enforcement. *See id;* The United States' Statement of Interest in Support of Plaintiffs, 4:20-cv-64-DMB-JMV) (N.D.Miss. 2020), attached hereto as **Exhibit 6**.

4

17. On April 15, 2020, counsel for First Baptist Church sent a letter to Clay Britton, general counsel for Governor Laura Kelly, requesting that Governor Kelly incorporate more narrowly tailored restrictions into her statewide order prohibiting churches from holding worship services with more than 10 non-performing members. In the letter, counsel requested the Governor make specific allowance for churches to hold in-person indoor worship services provided the church congregants follow rigorous social distancing and healthy safety protocol as set forth in the letter even though these requirements exceed those imposed by EO 20-18 on other similar secular facilities. *See* Letter to Clay Britton, Chief Counsel for Governor Laura Kelly, dated April 15, 2020, attached as **Exhibit 7**.

18. On April 16, Mr. Britton responded but did not permit the church to meet nor rescind or modify the Order, but rather stated that the Governor's Office was reviewing the request and "will reach a decision as soon as tomorrow." *See* Letter to Ryan Kriegshauser, dated April 16, 2020, attached as **Exhibit 8**.

19. As of April 15, 2020, the Kansas Department of Health and Environment (hereinafter "KDHE") reports that Ford County, Kansas (Dodge City) has 32 confirmed cases of COVID-19. *See* KDHE COVID-19 Quick Stats, updated 4/15/2020, attached as **Exhibit 9.**

20. Ford County has a population of approximately 33,619 people. As of April 15, 2020, the per capita rate of COVID-19 infection in the county was approximately 0.095%, or approximately one tenth of 1%.

21. As of April 15, 2020, KDHE reports that Geary County, Kansas (Junction City) has 10 confirmed cases of COVID-19. *See id.*

22. Geary County has a population of approximately 34,895 people. As of April 15, 2020, the per capita rate of COVID-19 infection in the county approximately 0.028%, or one thirty fifth of 1%.

## JURISDICTION AND VENUE

23. This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. § 1983.

24. This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331 and 1343.

25. This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

26. This Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2002, the requested injunctive relief under 28 U.S.C. § 1343, and reasonable attorney fees and costs under 42 U.S.C. § 1988.

27. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendant resides in this district.

## PARTIES

28. Plaintiff First Baptist Church is a non-profit church organized exclusively for religious purposes within the meaning of § 501(c)(3) of the Internal Revenue Code. First Baptist Church is located in Dodge City, Kansas.

29. Plaintiff Stephen Ormord serves as Pastor of First Baptist Church in Dodge City, Kansas.

30. Plaintiff Calvary Baptist Church is a non-profit church organized exclusively for religious purposes within the meaning of § 501(c)(3) of the Internal Revenue Code. Calvary Baptist Church is located in Junction City, Kansas.

31. Plaintiff Aaron Harris serves as Pastor of Calvary Baptist Church in Junction City, Kansas.

32. Defendant Laura Kelly is the Governor of Kansas and is sued in her official capacity only.

## FACTS

### First Baptist Church (Dodge City, Kansas)

33. First Baptist Church has continuously operated as a Christian church in Dodge City, Kansas since at least the 1930s.

34. The Church is affiliated with the American Baptist denomination.

35. First Baptist Church and Pastor Ormord believe that the Bible is the inspired Word of God and the sole authority for faith and practice.

36. They believe the Bible teaches, among other things, the requirement to gather together for corporate prayer and worship and that such assembly is necessary and good for the Church and its members' spiritual growth.

37. The Church has a relatively small, rural congregation with an average attendance of between 50 and 75 people.

38. Despite the Church's best efforts, it has been difficult for the church to offer an online service, and many congregants have internet bandwidth limitations or lack internet altogether and are therefore unable to participate in an on-line service.

39. On Easter Sunday, April 12, 2020, the Church attempted to offer a "drive-in" service in its parking lot and online streaming of its service to congregants sitting in their individual cars. However, high winds and internet streaming problems made it impossible for congregants to listen to or effectively participate in the service. As a result, some congregants expressed their difficulties to the church on Facebook. Those part of the service inside the building followed its previous social distancing and health safety protocol as outlined herein during the service.

### First Baptist Church's Voluntary Response to COVID-19 Guidelines

40. As a response to federal, state, and local guidance at the beginning of the COVID-19 outbreak, but prior to any local or state order regarding mass gatherings, First Baptist Church voluntarily adopted rigorous social distancing and health safety protocol to protect church service attendees.

41. In its most current form, this protocol, as outlined in Exhibit 4 (letter to Clay Britton), includes the following precautions:

    a. Prior to and following the in-person service, the facility will be deep cleaned;

    b. Invitations will be directed to regular church attendees for this in-person service;

    c. Individuals will be advised to continue to engage in "stay at home" protocols as directed by EO 20-16 in order to attend the service;

    d. No church members are known to have had any contact with known COVID-19 confirmed cases;

    e. Attendees will be advised to perform temperature checks at home on all attendees prior to attending the service. Individuals that are ill or have fevers will not attend;

f.  High-risk individuals will be advised not to attend the in-person service;

g.  Attendees will be advised to bring their own PPE, including masks and gloves;

h.  Attendees will be advised not to engage in hand shaking or other physical contact;

i.  Hand sanitizer will be available for use throughout the facility;

j.  The in-person service will be limited to 50 individuals in a space that has a capacity for 300 individuals (a cross-shaped auditorium 50 feet by 74 feet at the center; 2,950 square feet total, allowing almost 57 square feet available to each attendee at maximum social distancing);

k.  Co-habituating family units may sit closer together but otherwise the maximum social distancing possible will be used, however, at a minimum, the CDC-recommended protocol will be observed with a minimum distance of at least 6 feet;

l.  A single point of entry and single point of exit on opposite sides of the building will be used, establishing a one-way traffic pattern to ensure social distancing;

m.  Ventilation will be increased as much as possible, opening windows and doors, as weather permits;

n.  These procedures will be communicated to church members in advance of the service;

o.  Church bulletin and offering plates will not be used during the service;

p.  Attendees will be advised to wash their clothes following the service;

q.  If Church leadership becomes aware of a clear, immediate, and immanent threat to the safety of the attendees or cannot follow the protocols listed above, the gathering will be immediately disbanded.

42. The Church and Pastor Ormord will continue to attempt to offer streaming services, weather and technology permitting, but seek to have the option to legally move their weekly Sunday worship service indoors if streaming services are not feasible or practicable, while practicing adequate social distancing and health safety protocol as recommended by federal, state, and local authorities, and without being subject to penalty or punishment.

**Calvary Baptist Church (Junction City, Kansas)**

43. Calvary Baptist Church has continuously operated as a Christian church in Junction City, Kansas since 1956.

44. The Church is an independent church, not closely affiliated with any association, convention, conference, or council of churches.

45. Calvary Baptist Church and Pastor Harris believe that the Bible is the inspired Word of God and the sole authority for faith and practice.

46. They believe the Bible teaches, among other things, the requirement to gather together for corporate prayer and worship and that such assembly is necessary and good for the Church and its members' spiritual growth.

47. The Church has a relatively small congregation with an average attendance of between 75 and 100 people. Although the Church's seating capacity is approximately 300, the Church will limit attendance to no more than 75.

48. The Church offers an online streaming option for viewing its service.

49. In order to offer an outdoor service, the Church must rent equipment on a weekly basis, including outdoor loud speakers, a tent canopy, and additional chairs.

**Calvary Baptist Church's Voluntary Response to COVID-19 Guidelines**

50. As a response to federal, state, and local guidance at the beginning of the COVID-19 outbreak, but prior to any local or state order regarding mass gatherings, Calvary Baptist Church voluntarily adopted rigorous social distancing and health safety protocol to protect church service attendees.

51. For example, the Church:

a. Split out pews and marked designated sitting areas to keep non-cohabitating congregants at least six feet apart before, during, and after the worship service;

b. Marked multiple entrances to encourage socially distanced foot traffic;

c. Propped doors open during services to prevent the need for congregants to touch doors while entering and exiting the church or sanctuary;

d. Suspended the passing of offering plates;

e. Actively discouraged handshaking or other social touching;

f. Began offering hand sanitizer throughout the building;

g. Procured face masks to offer to any interested persons.

52. The Church and Pastor Harris will continue to attempt to offer online streaming and outdoor services, weather and technology permitting, but seek to have the option to legally move their weekly Sunday worship service indoors when outdoor services are not feasible or practicable, while practicing adequate social distancing and health safety protocol as recommended by federal, state, and local authorities.

53. As recently as April 15, 2020, Pastor Harris has continued to communicate with law enforcement regarding the options for legally holding in-person church services. He has been

directly informed by the Geary County Sheriff that any violations of EO 20-18 will be referred to the Geary County Attorney's office for criminal prosecution.

## COUNT I

### Violation of the First Amendment to the U.S. Constitution (Free Exercise)

54. Plaintiffs incorporate by reference paragraphs 1 through 53.

55. Plaintiffs' sincerely held religious beliefs teach that Bible is the inspired Word of God and the sole authority for faith and practice.

56. Plaintiffs sincerely believe that the Bible teaches the necessity of gathering together for corporate prayer and worship and that such assembly is necessary and good for the Church and its members' spiritual growth.

57. Executive Order 20-18 substantially burdens Plaintiffs' religion by prohibiting them from holding in-person church services with more than 10 non-performing congregants.

58. Executive Order 20-18 substantially interferes with Plaintiffs' ability to carry out their religious doctrine, faith, and mission.

59. Executive Order 20-18 targets, discriminates against, and shows hostility towards churches, including Plaintiffs.

60. Executive Order 20-18 is neither neutral nor generally applicable.

61. The State does not have a compelling reason for prohibiting church services where congregants can otherwise practice adequate social distancing protocol, especially when compared to the vast secular activities exempted under the order, nor has it selected the least restrictive means to further any purported interest.

62. Executive Order 20-18 violates the Free Exercise Clause of the First Amendment to the United States Constitution, both facially and as applied.

63. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT II

**Violation of the First Amendment to the U.S. Constitution (Free Speech)**

64. Plaintiffs incorporate by reference paragraphs 1 through 53.

65. Executive Order 20-18 violates Plaintiffs' freedom of speech by prohibiting them from engaging in religious speech through their church services, which occur exclusively on private property.

66. Executive Order 20-18 gives government officials unbridled discretion with respect to enforcement of the order and the imposition of any penalty, making the order susceptible to both content- and viewpoint-based discrimination.

67. Prohibiting or punishing Plaintiffs' religious speech does not serve any legitimate, rational, substantial, or compelling governmental interest.

68. The State also has alternative, less restrictive means to achieve any interest that it might have.

69. Executive Order 20-18 violates the Free Speech Clause of the First Amendment to the United States Constitution, both facially and as applied.

70. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT III

**Violation of the First Amendment to the U.S. Constitution (Right to Assemble)**

71. Plaintiffs incorporate by reference paragraphs 1 through 53.

72. The First Amendment prohibits the State from violating Plaintiffs' right to peaceably assemble.

73. Executive Order 20-18 violates Plaintiffs' right to peaceably assemble because the ban on in-person services does not serve any legitimate, rational, substantial, or compelling governmental interest.

74. In addition, the State has alternative, less restrictive means to achieve any interest that it might have.

75. Executive Order 20-18 violates the right to assemble under the First Amendment to the United States Constitution, both facially and as applied.

76. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT IV

**Violation of Kansas Preservation of Religious Freedom Act**

77. Plaintiffs incorporate by reference paragraphs 1 through 53.

78. The Kansas Preservation of Religious Freedom Act (hereinafter "KPRFA") prohibits the government from substantially burdening a person's civil right to exercise of religion, even if the burden results from a rule of general applicability, unless it can demonstrate that "application of the burden to the person" is "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." Kan. Stat. Ann. § 60-5303(a).

79. Defendant's Executive Order is subject to KPRFA because KPRFA applies to "all state laws, rules, regulations and any municipal or county ordinances, rules or regulations and the implementation of those laws." Id. § 11-61-1(7).

80. Defendant's Executive Order substantially burdens Plaintiffs' religion by prohibiting them from holding in-person indoor church services with more than 10 non-performing attendees.

81. Defendant's Executive Order does not further a compelling interest, nor is it narrowly tailored to advance any compelling governmental interest.

82. Defendant's Executive Order therefore violates KPRFA as applied to Plaintiffs.

83. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the State of Kansas from enforcing the portion of Governor's Executive Order 20-18 limiting church public gatherings to less than 10 non-performing persons, thus allowing Plaintiffs and their congregants to continue to meet for worship while practicing adequate social distancing;

b. Enter a judgment declaring that Governor's Executive Order 20-18 violates the U.S. Constitution's Free Exercise, Free Speech, Right to Assemble, and Due Process Clauses.

c. Enter a judgment declaring that Governor's Executive Order 20-18 violates the Kansas Religious Freedom Restoration Act;

d. Award Plaintiffs' court costs and reasonable attorney fees; and

e. Award such other and further relief as to which Plaintiffs may be entitled.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment of the United States Constitution. It is respectfully requested that the jury trial be held in Wichita, KS given its geographic proximity to all plaintiffs.

Respectfully submitted this 16th day of April 2020.

/s/ Tyson C. Langhofer
Tyson C. Langhofer
KS Bar No. 19241
ALLIANCE DEFENDING FREEDOM
20116 Ashbrook Place, Suite 250
Ashburn, VA 20147
(480) 388-8205
tlanghofer@ADFlegal.org

David A. Cortman*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Ryan J. Tucker*
AZ Bar No. 034382
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
rtucker@ADFlegal.org

/s/ Joshua A. Ney
Joshua A. Ney,
KS Bar No. 24077
NEY LAW FIRM, LLC
900 S. Kansas Ave., Ste. 402B
Topeka, KS 66612
 (785) 414-9065
josh@joshney.com


/s/ Ryan A. Kriegshauser
Ryan A. Kriegshauser
KS Bar No. 23942
KRIEGSHAUSER LAW LLC
15050 W. 138th St., Unit 4493
Olathe, KS 66063
(913)  303-0639
ryan@kriegshauserlaw.us


ATTORNEYS FOR PLAINTIFFS

*Admission for Pro Hac Vice forthcoming.

## VERIFICATION

I declare under penalty of perjury that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: April 16, 2020

*Stephen Ormord*
Pastor Stephen Ormord
First Baptist Church

## VERIFICATION

I declare under penalty of perjury that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: April 16, 2020

*[signature]*

Pastor Aaron Harris
Calvary Baptist Church