# EXHIBIT

# 4



STATE OF KANSAS
OFFICE OF THE ATTORNEY GENERAL

DEREK SCHMIDT
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

# MEMORANDUM

TO: Kansas Prosecutors and Law Enforcement

FR: Attorney General Derek Schmidt

CC: Governor, Adjutant General, KHP Superintendent, KBI Director

DT: April 8, 2020

RE: Addendum 1 to March 24, 2020, law enforcement duties and authorities memorandum regarding restrictions on religious facilities, services or activities set forth in EO 20-18

This memorandum provides assistance to state and local law enforcement in determining their duties and authorities related to churches and other religious facilities, services or activities under specific provisions of Executive Order 20-18, which was issued by the governor on April 7, 2020. This new order must be read in conjunction with Executive Order 20-16, which continues to define the performance of or attendance at religious or faith-based services or activities as an essential function exempt from "stay-home" requirements.

The application of "mass gathering" restrictions to religious facilities, services or activities gives rise to legal concerns not presented in prior executive orders related to COVID-19.[1] Kansas statutory and constitutional law, which remain in effect, provide substantially more protection for Kansans' fundamental religious freedoms than does federal law. These state legal protections for religious freedom cast serious doubt on the lawfulness of any threatened or actual arrest, prosecution or punishment for violating these newly ordered limitations on religious facilities, services or activities. Therefore,

[1] EO 20-18 also contains new requirements for non-religious funerals. This memorandum does not address those provisions of EO 20-18.

we strongly recommend Kansas law enforcement encourage *cooperative compliance* with these public health limitations, rather than criminally enforce them. During the current COVID-19 pandemic, most Kansas religious leaders already have canceled in-person group activities and worship services or have replaced them with online, remote services. Public health officials continue to urge religious organizations to cancel or strictly limit in-person meetings, including worship services, so as not to further the spread of the virus. Kansas has not experienced the sorts of cases, well-publicized in other states, where a few religious leaders willfully defied public health guidance and exposed their congregants to COVID-19.

EO 20-18, which by its terms takes effect today,[2] revises guidance for religious gatherings while it remains in effect. Its key changes are:

- "Churches or other religious facilities" are now expressly covered by the prohibition on "mass gatherings" rather than being exempted as they were previously.
- More than 10 people are prohibited from convening "in a confined or enclosed space at the same time," including in churches or other religious facilities.
- "Churches or other religious services or activities" are prohibited from having more than 10 congregants or parishioners in the same building or confined or enclosed space, but a larger number of persons who are conducting the service itself may gather provided social distancing and similar requirements are maintained.

It should be noted that EO 20-18 does not prohibit Kansans from leaving their homes to perform or attend religious or faith-based services or activities,[3] nor does it impose the new prohibition on gatherings exceeding 10 persons on religious gatherings that are not in "the same building or confined or enclosed space" (*e.g.*, outdoors).[4] While compliance previously was voluntary, by virtue of the exercise of the governor's emergency powers under K.S.A. 48-925(c) EO 20-18 on its face makes violation of these new limitations on certain religious gatherings that exceed 10 persons punishable by imprisonment and/or a fine. *See* K.S.A. 2019 Supp. 48-939.

---

[2] As we advised in our March 24, 2020, memorandum, due process considerations counsel that no criminal enforcement of any executive order issued under authority of K.S.A. 48-924 and 48-925 should be considered until such order is published in the Kansas Register in the same manner that acts of the legislature may be published to attain the force of law.

[3] Executive Order 20-16 remains unchanged and continues to define performing or attending religious or faith-based services or activities as an essential function exempt from stay-home requirements although still subject to social distancing, hygiene and other COVID-19 prevention measures.

[4] Requirements for social distancing, hygiene and other COVID-19 prevention measures remain in effect for all gatherings, including religious gatherings not subject to the new 10-person limitation.

**The Office of Attorney General strongly encourages all Kansans participating in religious services or activities to voluntarily comply with the new restrictions on religious mass gatherings in order to protect public health.** Nevertheless, for the legal reasons set forth below, we also strongly discourage law enforcement from attempting to enforce the requirements of EO 20-18 as violations of the criminal law.[5]

## Analysis

In our view, Kansas statute and the Kansas Constitution's Bill of Rights[6] each forbid the governor[7] from criminalizing participation in worship gatherings by executive order.[8] The Kansas Preservation of Religious Freedom Act, K.S.A. 2019 Supp. 60-5302 *et seq.,* ("Religious Freedom Act" or "Act") provides:

> "Government shall not substantially burden a person's civil right to exercise of religion even if the burden results from a rule of general applicability, unless such government demonstrates, by clear and convincing evidence, that application of the burden to the person: (1) Is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *See* K.S.A. 2019 Supp. 60-5303(a).

The Religious Freedom Act applies to restrain actions by the "government," which specifically includes both the state executive branch and local governments and officials. *See* K.S.A. 2019 Supp. 60-5302. It protects the "exercise of religion," which is defined broadly and expressly includes "the right to act … in a manner substantially motivated by a sincerely-held religious tenet or belief," which certainly includes attending church, synagogue, temple, or mosque for the purpose of worship. *See* K.S.A. 2019 Supp. 60-5302(c). It restrains government from "substantially burden[ing]" the exercise of religion,

---

[5] Violation of a lawful order issued pursuant to the emergency powers granted to the governor by K.S.A. 48-925, is a class A misdemeanor, which is punishable by up to 1 year of imprisonment in the county jail and/or up to a $2,500 fine. *See* K.S.A. 48-939.

[6] The First Amendment to the United States Constitution and/or federal statutes may also restrict or prohibit these provisions (and give rise to a claim for plaintiff's attorney fees), but this memorandum will confine its analysis to state-law limitations.

[7] A similar analysis would apply to any similar order that burdened religious gatherings, such as a local order or an order of the Secretary of Health and Environment.

[8] There exists a more fundamental question whether, or to what extent, the Kansas Constitution allows the legislature to delegate its law-making power to the governor as contemplated by K.S.A. 48-924 and 48-925. This memorandum does not address that question but observes that exercises of any such power by the governor (such as provisions in EO 20-18) that are in tension with the fundamental rights of Kansans protected by the people themselves through the Kansas Constitution's Bill of Rights and/or by separate legislative enactment such as the Kansas Preservation of Religious Freedom Act at a bare minimum strain the limits of the validity of any such delegation. *See, generally* Kan.Const.Art.2, §1 (vesting legislative power in the legislature); *see also generally Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 634-55 (1952) (Jackson, J., concurring).

and "burden" specifically includes "assessing criminal … penalties." *See* K.S.A. 2019 Supp. 60-5302(a). There can be no doubt that imposing a criminal penalty of up to 1 year in jail and/or a $2,500 fine constitutes a "substantial[]" burden.

Thus, EO 20-18 substantially burdens many Kansans' right to exercise religion. Because the Religious Freedom Act applies to provisions of EO 20-18 that impose restrictions on religious facilities, services, or activities, the penalties for violating those provisions can survive scrutiny only if the government demonstrates that the application of EO 20-18 to persons gathering in such facilities or for such services or activities:

(1) Is in furtherance of a compelling governmental interest; and
(2) Is the least restrictive means of furthering that compelling governmental interest.

*See* 2019 Supp. K.S.A. 60-5303(a). This is a "strict scrutiny" standard of review, which is the highest standard applied in the law and which governments rarely satisfy. As described above, we have no doubt the restrictions on religious gatherings in EO 20-18 may serve a compelling governmental interest of protecting the public health by slowing the spread of COVID-19. But the executive order also must be the "least restrictive means" of furthering that compelling interest. And the burden is on the government to prove by clear and convincing evidence that no less-restrictive means is available. *See* K.S.A. 60-5303(a). It is doubtful the government can meet that burden here.

First, the government cannot show by clear and convincing evidence that it is currently necessary to subject *every* church or other religious services or activities throughout the state to the requirements in EO 20-18 to slow the spread of COVID-19. Current Centers for Disease Control guidance for faith-based organizations recommends a graduated approach based on community risk.[9] That individually tailored less-restrictive means is absent from the blanket statewide approach of EO 20-18.

Second, EO 20-18 exempts 26 categories of activities or facilities from its mass-gathering prohibitions, *see* EO 20-18, paragraph 2.a-z, just as the prior version of the mass-gatherings order (Executive Order 20-14) had also exempted religious activities. Indeed, *only* religious activities (and non-religious funerals) are singled out for increased regulation under EO 20-18 – while other indoor gatherings that invite similar interpersonal interaction and thus pose similar public health risk (such as gathering in shopping malls or other retail establishments or in libraries) remain unregulated except by the less-restrictive means of general social distancing and hygiene guidelines.

Third, EO 20-18 offers no justification for why voluntary compliance had failed to satisfy the compelling public health interest or why criminal penalties are now necessary to promote compliance by Kansans engaged in religious services or activities (but not, e.g., by those engaged in shopping, child care, providing government or legal services, or

[9] *See* "Guidance Highlights for Community- and Faith-Based Organizations, available at https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/index.html (last accessed April 7, 2020).

being detoxified). Indeed, the continued reliance on social-distancing and hygiene restrictions for mass gatherings in at least 26 other categories suggests the new burdens on religious services or activities – under penalty of arrest, imprisonment or criminal fine – are not the least-restrictive option to satisfy the State's compelling interest.

Separate from the Religious Freedom Act, the Kansas Supreme Court has recognized similar religious freedom protections in the Kansas Constitution's Bill of Rights that exceed the religious freedom protections in the federal Constitution. *See State v. Smith*, 155 Kan. 588, 127 P.2d 518 (1942); *see also generally Hodes & Nauser, MDs, P.A. v. Schmidt*, 309 Kan. 610, 440 P.3d 461 (2019) (recognizing that the Kansas Constitution's limits on government action may exceed federal limits). Section 7 of the Kansas Bill of Rights provides:

> "**The right to worship God according to the dictates of conscience shall never be infringed**; nor shall any person be compelled to attend or support any form of worship; **nor shall any control of or interference with the rights of conscience be permitted**, nor any preference be given by law to any religious establishment or mode of worship. No religious test or property qualification shall be required for any office of public trust, nor for any vote at any election, nor shall any person be incompetent to testify on account of religious belief."

Kan. Const., Bill of Rights, § 7 (emphasis added). Kansas courts interpreting this provision have adopted a version of a strict scrutiny test substantially similar to that in the Religious Freedom Act. *See Stinemetz v. Kansas Health Policy Authority*, 45 Kan. App. 2d 818, 849-50, 252 P.3d 141 (2011).

## Conclusion

**To help prevent the spread of COVID-19, the Office of the Attorney General advises Kansans to adhere to the limitations on religious and faith-based gatherings set forth in Executive Order 20-18.** However, for the reasons set forth above, the provisions of the governor's order that purport to *criminalize* certain gatherings for religious services or activities likely violate both state statute and the Kansas Constitution, which would render them void and unenforceable. Because no Kansan should be threatened with fine or imprisonment, arrested, or prosecuted for performing or attending church or other religious services (which even during the current state of disaster emergency remain an "essential function" recognized by EO 20-16), **law enforcement officers are advised to encourage cooperative compliance with the new provisions of EO 20-18 and to avoid engaging in criminal enforcement of its limitations on religious facilities, services or activities.**